JACKSON READY-MIX CONCRETE, et al. *v.* YOUNG

No. 40444          March 25, 1957          93 So. 2d 645

*Vardaman S. Dunn,* Jackson, for appellants.

*Pyles & Tucker,* Jackson, for appellee.

McGEHEE, C. J.

This is a case under the Workmen's Compensation Law. The claimant Ernest Young began working for the appellant Jackson Ready-Mix Concrete some time prior to March 7, 1955. His work was that of a truck driver, and his average weekly wage, according to the finding of the attorney-referee, was $40.50. He admittedly sustained an injury while about the duties of his employment when loading sacks of ready-mix concrete onto his truck from the concrete platform of his employer, Jackson Ready-Mix Concrete. It appears that the truck was backed up to the concrete platform and that in loading the sack of concrete-mix, weighing approximately seventy pounds, the claimant's foot slipped and his leg went down between the truck and the platform, and the result was that some of the skin was scraped from his shin and his leg was bruised.

The testimony on behalf of the claimant was that he did not consider his injury of sufficient consequence at the time it occurred to cause him to stop work and he continued to perform his duties throughout that day. However, he testified that after he got home on the even-

ing of March 7, 1955, a knot had appeared on his leg between his knee and ankle where he had been injured, and that the leg became swollen and painful, and his wife put some alcohol on the injured leg; that on the next morning the claimant returned to the place of business of his employer and reported his injury; that thereupon he was sent in a company truck by the official in charge to see the company doctor; that the doctor, after seeing that the leg was injured and swollen sent the claimant to a local hospital where he remained from Tuesday, March 8, 1955, until Friday March 11, 1955; that after leaving the hospital the claimant suffered pain on both Saturday and Sunday nights of March 12th and 13th to the extent that he endeavored to have the attending physician come to see him so that he could get relief, and that failing in his effort to procure the attendance of the doctor, the claimant got the manager or some official of his employer to intervene and he succeeded in getting the doctor.

It appears that the claimant was in the hospital from about three days to nearly a week on three different occasions from March 8, 1955, to about the first of April, and that the principal complaint of the claimant on his second entry to the hospital was that the elastic bandage that had been placed on his leg was wrapped too tight and that this was causing increased pain. The doctor testified that the injury to the leg from the accident had completely healed on or about March 15, 1955, but the claimant testified to the contrary. The doctor testified that his subsequent entry to the hospital on or about March 18th had no connection with the accident sustained by the claimant on March 7th, but that such entry was pursuant to an agreement between himself and his patient that he would go back to the hospital to have a varicose vein removed from his leg, in view of the fact that his employer carried some sort of a health insurance policy for the protection of its employees.

On the other hand, the claimant testified that he did not authorize the removal of the varicose vein, and knew nothing about it until he came from under the influence of an anesthetic at the hospital, which was on March 19th. Moreover, the claimant further testified that the doctor told him that the operation had been authorized by the manager of the appellant, Jackson Ready-Mix Concrete, under the protection of the said insurance policy.

It is undisputed that the claimant was about forty-five years of age, and that the varicose vein appeared on his leg when he was about twenty or twenty-five years of age, and that it had never given him any trouble prior to the accident for which compensation was claimed. The doctor testified in regard to his examination of the patient that: "At the time we also found that Ernest had varicose veins, which we stated the veins themselves were not caused by the injury. We took this case to be a case of an injury causing an aggravation, because he had varicose veins." Further on in his testimony, the doctor stated: "At least, it is an aggravation of a condition he had already." The doctor was also asked the following questions and gave the following answers:

"Q. Now, then, on March 7th, I believe your history says there Ernest let his foot slip down between the concrete ramp and the truck body and had the trauma? A. Abrasion. Q. Abrasion and contusion? A. That's right. Q. And his leg was pretty badly swollen when you saw him on March 8th? A. Yes, sir. Q. Is it customary you sent a man to the hospital when you have a swelling like this? A. For swelling, I didn't know he was going to have all this. I think that's all due to the injury. At least, it's aggravation of a condition which he had already. Q. He had had the varicose veins for twenty-five years? A. Well, I don't know how long, but he had them when I saw him. Q. This injury he received did ag-

gravate that condition, did it not? A. The veins, you might say, aggravated the injury. If he hadn't had the veins, he wouldn't have had the swelling of the leg. You get what I mean? Q. Yes, sir. A. For instance, if it gets hurt and you don't have the varicose veins, you probably would heal up quicker than usual. Q. This pre-existing condition, when you get that trauma, it aggravates the condition? A. That's correct. Q. And you put him in the hospital to cure this condition he had as a result of the injury, did you not? A. That's correct.''

Elsewhere in his testimony, the attending physician was asked: ''But you do say that the trauma he had aggravated his condition? A. I would say the varicose veins aggravated his trauma. Q. Well he did not have the trauma. He did have the varicose veins? A. Well the varicose vein, after he had the trauma, made the trauma worse.'' The attending physician, who was introduced as a witness for the employer, Jackson Ready-Mix Concrete, and insurance carrier, Western Casualty & Surety Company, was ''the company physician for the Jackson Ready-Mix Concrete'', according to his own testimony.

Two other doctors, who had not examined the patient, and were testifying in answer to hypothetical questions, did not question the advisability of the removal of the varicose vein, and they conceded that the attending physician would be in the better position to have determined the advantage or disadvantage of making such an operation. The first of these doctors testified, among other things, that ''The circulation in an extremity where you have a varicosity does interfere with the circulation, not only to the place that is injured, but to the entire leg.'' He further testified that ''The thing I am saying is an injury in an extremity where there is a varicosity, you get a lessening and disturbance of the circulation, which impedes the healing of an

injury and also makes it much more susceptible to breaking down again.''

The other doctor, after having been asked certain hypothetical questions, was finally asked by the attorney for the claimant: ''Would you say there is causal connection between the trauma, the injury, he received and the condition he suffered and is now suffering? A. If he never had had the trauma, he most likely would never have had this trouble. * * * After removing the vein, you have decreased circulation there, as he goes to use that leg, and because of decreased circulation, it will pain him. Q. Will it cause swelling? A. It will cause swelling. Q. And this condition may result throughout the rest of his life? A. It may.'' It is contended by the appellants that there is no substantial conflict in the medical testimony as a whole. Nevertheless, it is left to the attorney-referee and the full Commission, as triers of the facts, to determine what conclusion should have been reached from the testimony. It is to be conceded that there is other testimony in the record favorable to the contentions of the appellants, but it is the province of the appellate court in these cases where an award has been made by the Commission to determine whether or not from the whole record there was substantial evidence to support the award. We are unable to say that there was not.

In this case the attorney-referee allowed compensation to the claimant in the sum of $25 per week ''for temporary total disability beginning said payments on March 9, 1955, and to continue same so long as said disability exists, but not to exceed 450 weeks for the total sum of $8,600; and that when claimant reaches maximum recovery another hearing be held, if necessary, to determine the nature and extent of disability * * *''. The full Commission affirmed this award, and on the appeal to the circuit court the judgment of the full Commission was affirmed.

As to whether or not the injury aggravated the pre-existing condition of the claimant or whether the pre-existing condition, for which the company doctor performed the operation, interfered with the healing of the injury, or otherwise caused the claimant to be temporarily totally disabled, we think that these were issues to be decided by the attorney-referee and the Commission. We shall refrain from disagreeing with the medical testimony as to whether or not the varicose vein aggravated the trauma or the trauma aggravated the condition of the varicose vein, since such a decision would be likened unto determining whether the hen is responsible for an egg or an egg is responsible for a hen. Moreover, without regard to whether or not the injury caused by the accident was completely healed on or about March 15, 1955, and to subsequent disability testified to by the claimant, and which testimony was accepted as true by both the attorney-referee and the Commission, and affirmed by the circuit court, as aforesaid, the fact remains that the testimony is in dispute as to whether or not the operation on the varicose vein was authorized by the employer or by the claimant.

The claimant testified that when he told the attending physician that his leg being wrapped real tight was what was causing his leg to hurt, that the physician told him in substance that he should have the vein ''drained'', that ''It won't get well unless you do''; also, Q. ''What wouldn't get well? A. The place where it was bruised. The bruised place. Q. Is that the place on your leg where you were hurt on the truck? A. Yes, sir. * * * Q. He said he would have to drain the vein to get it well? A. Yes, sir. Q. To get what well? A. My injury, where I was injured on the job. Q. He was talking about the vein? A. No, sir.''

Being unable to say from this record that the decision of the attorney-referee, full Commission, and

the circuit court, is not supported by substantial evidence, we do not feel justified in disturbing the award, and the award is therefore affirmed.

■■ ■ The motion of the claimant's attorneys for the allowance of additional attorneys' fee to the twenty-five percent allowed them by the Commission, we hold that the motion cannot be passed on at this time for the reason that no service of the motion was had upon the attorney for the appellants, since there is no certificate attached thereto that the notice required by the Rules of this Court as to all motions was given. Then, too, the percentage of the award to which the attorneys would be entitled should be based upon the amount of the award made for the period that such temporary total disability continues to exist.

Affirmed.

*Hall, Lee, Holmes* and *Ethridge,* JJ., concur.

## ON MOTION FOR ALLOWANCE OF ADDITIONAL ATTORNEYS' FEE

The above-styled motion avers that heretofore an agreement was entered into between said attorneys and claimant, appellee here, for an attorneys' fee for services rendered by the firm of Pyles and Tucker, Jackson, Mississippi, for their representation of the claimant, Ernest Young, before the Workmen's Compensation Commission, in the sum of 25% of the total amount of compensation awarded, and that the sum was approved by said commission; that the employer and its insurance carrier, appellants here, appealed from the order and award of the said commission to the Circuit Court of the First Judicial District of Hinds County, Mississippi, and that said attorneys appeared on behalf of the claimant before the said circuit court; that the circuit court

entered a judgment affirming the said order and award of the commission, and appeal was taken from said judgment to the Supreme Court of Mississippi by the appellants herein, and that the said attorneys have rendered additional and valuable service to the claimant on the said appeals, both of which were successful; and that they should be awarded a reasonable fee by this Court for their said additional services on the said appeals.

We are of the opinion that the attorneys are entitled to a fee which, when added to the 25% contracted for, will not exceed a total fee for all services in the case of 33 1/3% of the total recovery that may be had under the said award; but since the award was for a certain percent of the average weekly wages of the claimant of $44.50 per week, and for not exceeding 450 weeks, and since the attorney-referee left the matter open for future determination as to whether or not the said temporary total disability should prove to be permanent, the 33 1/3% total fee is to be confined to that percent of the amount of the total award that may be recoverable under the subsequent circumstances and conditions that may prevail. Since the award was made for only temporary total disability, it may or may not prove to be permanent, the situation here involved being different from that presented where the disability is either permanent total or permanent partial disability found.

Motion for attorneys' fee allowed in accordance with the foregoing conditions.

All Justices concur except *Kyle, J.,* who took no part.